Filed 6/28/23; Modified and Certified for Pub. 7/21/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re Marriage of LORRAINE T. and CHRISTOPHER T. DeWOLFE. | B313469 consolidated with B317196 (Los Angeles County Super. Ct. No. BD483342) |
| LORRAINE T. DeWOLFE, Appellant, v. CHRISTOPHER T. DeWOLFE, Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lawrence P. Riff, Judge, and Melinda A. Johnson, Judge.* Reversed.

*Retired Judge of the Ventura Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

The Cochran Firm California & Family Legal and Edward L. Lyman III for Appellant.

Hersh Mannis, Neal Raymond Hersh, Adam Philip Lipsic, Andrew Stein; Law Offices of Judith R. Forman and Judith R. Forman for Respondent.

## I.   INTRODUCTION

Lorraine T. DeWolfe (Lori) appeals from a privately compensated temporary judge's (the Honorable Melinda A. Johnson) ruling that Christopher T. DeWolfe (Chris)[1], Lori's former husband, provided an accounting as to certain stock that was the subject of a marital settlement agreement (MSA). Among other things,[2] Lori contends Judge Johnson erred in issuing her ruling because she (Lori) had withdrawn her request for an order[3] for an accounting of her stock interest before the ruling.  We reverse.

---

[1]     In their briefs, the parties refer to appellant as "Lori" and respondent as "Chris."  For clarity, we adopt the parties' designations.

[2]     Lori raises a number of other issues in her opening and reply briefs.  Because we reverse the court's ruling on another ground, we do not reach those issues.

[3]     In family law proceedings under the Family Code, the term "request for order" (RFO) "has the same meaning as the terms 'motion' or 'notice of motion' when used in the Code of Civil Procedure."  (California Rules of Court, rule 5.92(a)(1)(A).)

## II.   BACKGROUND

Lori and Chris were married on June 7, 1997.  On April 3, 2008, Lori filed a petition for marital dissolution.  A judgment of dissolution was entered on December 20, 2013.

The parties' MSA provided that Lori was "entitled to a ten per cent (10%) economic interest in the 5,201,282 shares of common stock in SGN Games, Inc. currently owned by [Chris] (such shares of [Chris's] common stock hereafter referred to as the 'SGN Interest'), said economic interest to be realized at such time as [Chris's] SGN Interest is monetized (i.e. paid out). . . .  If only a portion of the SGN Interest is monetized, [Lori's] economic interest shall be realized and paid in the same proportion.  If the SGN Interest is or becomes stock in another entity ('NewCo'), [Lori] shall have a continuing ten per cent (10%) economic interest in [Chris's] interest in 'NewCo.'  . . . [Chris] shall hold [Lori's] ten per cent (10%) interest in constructive trust for the benefit of [Lori] ([Lori's] interest hereafter referred to as '[Lori's] In-Trust Interest.')  [Lori's] In-Trust Interest shall include all allocable income, distributions of any kind (including without limitation dividends and accrued earnings) and/or other proceeds or gross profits arising from operations or the sale or other disposition of the SGN Interest, and [Lori] shall be solely responsible for any income taxes, capital gains taxes, or other liabilities arising from or related to [Lori's] In-Trust Interest. . . . [Lori] shall neither have nor exercise any rights as a shareholder of SGN Games, Inc. pursuant to her In-Trust Interest, nor shall she have any rights to compel sale or any other transfer or disposition of any portion of the SGN Interest or her In-Trust Interest, nor shall she have any right to compel any applicable

company to declare/pay dividends or other distributions in connection with [Lori's] In-Trust Interest. [Lori] acknowledges her understanding that [Lori's] In-Trust Interest is purely an economic interest in the SGN Interest."

In 2015, SGN Games Inc. merged with Netmarble America Corporation, a subsidiary of Netmarble Games Corporation. Chris provided Lori a letter from his attorneys reflecting that, pursuant to the merger, 3,726,246 of Chris's 5,201,282 shares of SGN Games, Inc. common stock were converted into the right to receive $15,818,679.14 and 1,475,035 shares of stock in the resulting entity.[4] Chris paid Lori her 10 percent interest in the stock sale proceeds—$1,581,867.91.

On March 13, 2018, Lori filed an RFO re Modification of Child Support and Attorney's Fees. On May 16, 2018, Lori and Chris stipulated to Judge Johnson's appointment as a temporary judge to resolve Lori's RFO and other issues between them including any additional RFOs either party filed prior to the May 1, 2019, expiration of Judge Johnson's appointment. The stipulation provided that Chris would advance Judge Johnson's compensation subject to reallocation by the court. It also contained the following "Oath of Temporary Judge" signed by Judge Johnson: "I, Hon. Melinda Johnson, Judge (Ret.), am an active member of the State Bar of California and consent to act as temporary judge in this matter as set forth in the above Stipulation. I certify that I am aware of and will comply with applicable provisions of Canon 6 of the Code of Judicial Ethics and Rule 2.831(b) of the California Rules of Court."

On April 30, 2019, prior to the expiration of Judge Johnson's stipulated appointment, Lori filed an RFO for an

---

[4]     This entity was later renamed "Jam City, Inc."

4

accounting of her 10 percent interest in the Jam City, Inc. stock Chris held in trust under the MSA (accounting RFO). Lori asserted that "Chris has never provided me with any verified accounting evidencing the evolution of the Common Shares and what comprises my 10% interest . . . ."

On October 16, 2019, pursuant to Lori and Chris's stipulation, the Honorable Lawrence P. Riff, the family law division presiding judge, appointed Judge Johnson to continue as the temporary judge on issues between Lori and Chris including Lori's accounting RFO. The appointment would terminate on April 1, 2020, except that Judge Johnson's appointment would continue as to RFOs filed prior to and still pending and undecided as of April 1, 2020. Like the parties' initial stipulation appointing Judge Johnson, this stipulation provided that Chris would advance Judge Johnson's compensation subject to reallocation by the court and included an identical "Oath of Temporary Judge" by Judge Johnson.

At a hearing on March 11, 2020, Lori's counsel stated that Lori would be requesting a hearing on her accounting RFO. Chris's counsel noted the stipulation appointing Judge Johnson would expire on April 1, 2020, and stated his desire that Judge Johnson hear the matter given her familiarity with the case. He believed Judge Johnson would have jurisdiction over the accounting RFO but did not want there to be any confusion. Judge Johnson concurred that she would have jurisdiction and suggested she "just reset it so we have a target date . . . ." After discussion with the parties, Judge Johnson set Lori's accounting RFO for a hearing on June 12, 2020.

The next day, Lori filed a substitution of attorney form, substituting herself as her counsel.

5

On June 8, 2020, Lori informed Chris's counsel that she would be withdrawing her accounting RFO and filing a "new motion" with additional information. On June 11, 2020, Lori e-mailed Judge Johnson stating that she was withdrawing her accounting RFO so there was no need for the June 12, 2020, hearing—"The accounting motion is being withdrawn, so there is no need for the status conference tomorrow."

Judge Johnson copied Chris's counsel on her response acknowledging Lori's e-mail. Chris's counsel objected to Judge Johnson taking the matter off calendar for June 12, 2020, stating his belief that Lori was "effectively forum shopping" and stating his belief that Judge Johnson would have jurisdiction over any future accounting RFO Lori would file. Judge Johnson responded, "If there is not an agreement to take the matter off calendar, I will leave it on."

At the June 12, 2020, hearing, Lori appeared with counsel. Judge Johnson stated that an issue concerning her jurisdiction to hear and decide Lori's accounting RFO had arisen and set that issue for hearing on June 26, 2020.

At the June 26, 2020, hearing, Lori's counsel stated that Lori did not have the funds to proceed with her accounting RFO. The same day, apparently after the hearing, Lori filed a notice withdrawing her accounting RFO without prejudice, stating she was withdrawing her RFO "solely because she [did] not have access to legal and accounting fees to proceed." Judge Johnson subsequently found she had jurisdiction over Lori's accounting RFO and any challenge to Lori's withdrawal notice.

On October 14, 2020, Chris filed an RFO to restore Lori's accounting RFO to Judge Johnson's calendar (restoration RFO). In support of his restoration RFO, Chris submitted declarations

6

and supporting evidence and requested that Judge Johnson find good cause to proceed solely on the papers. Lori objected to Judge Johnson hearing any motion filed after April 1, 2020, including Chris's restoration RFO.

On December 3, 2020, Judge Johnson deemed Chris's restoration RFO related to Lori's accounting RFO over which Judge Johnson had jurisdiction. Judge Johnson granted Chris's restoration RFO and deemed the evidence Chris submitted with it as his response to Lori's accounting RFO. Judge Johnson ruled that Lori could file a reply to Chris's response and continued the matter to February 26, 2021.

On February 24, 2021, Lori filed an RFO with Judge Riff to:

"1. Determine that Judge Pro Tem Melinda A. Johnson had no jurisdiction over the parties' post-judgment proceedings held after April 1, 2020;

"2. Determine that the Judge Pro Tempore's appointment is no longer operative;

"3. Determine that all hearings for this matter be vacated from her calendar;

"4. Determine that [Lori's] Notice of Withdrawal of the RFO for Accounting is valid."

On April 21, 2021, Judge Riff denied Lori's request, finding that "Department 2 of the Los Angeles Superior Court, in which the Supervising Judge of the Family Law Department sits, is not the appropriate forum for [Lori']s claims and does not have jurisdiction to grant the relief requested by [Lori] . . . ." Lori appealed Judge Riff's ruling.[5]

---

[5]     Because we hold below that Judge Johnson did not have jurisdiction to rule on Lori's accounting RFO because Lori's notice withdrawing her accounting RFO was effective when made on

7

On October 8, 2021, Judge Johnson ruled on Lori's accounting RFO. Judge Johnson found, "In July, 2015, [Lori] was informed that [Chris] had disposed of 3,726,426 of the relevant shares, receiving $15,818,679. The balance of 1,435,075 [*sic.*] shares were replaced with an identical number of shares of 'Series A' stock in Jam City. This disposition was not voluntary on [Chris's] part, but was required because of a merger between SGN and [NetMarble] America Corp., a subsidiary of its parent company, NetMarble Games Corp[.] ('NetMarble')[fn. omitted], resulting in a company branded Jam City Inc., with NetMarble Games Corp. remaining the parent company. Of the cash received, [Lori] received her 10% share, and [Chris] continues to hold 10% of the Series A stock he received in the transaction for her benefit.[Fn. omitted.] [Lori] asserted she had received no documentation confirming the number of shares that had been sold. Through April of 2016, [Lori] had ongoing communication with [Chris's] accountant and SGN's counsel regarding the proper income tax reporting of her proceeds. [Chris's] 1099's from SGN and his tax returns for 2015 and 2016 report the same information regarding the proceeds of the stock sale as [Chris] has reported directly to [Lori]." Judge Johnson found Chris's accounting "sufficient" and denied Lori's accounting RFO as moot.

June 26, 2020, Lori's challenge to Judge Riff's ruling is moot. (*Citizens for the Restoration of L Street v. City of Fresno* (2014) 229 Cal.App.4th 340, 362–363, fn. omitted ["An appeal is moot if the appellate court cannot grant practical, effective relief. [Citation.]"].)

## III. DISCUSSION

Lori argues Judge Johnson lacked jurisdiction to rule that Chris provided her with an accounting of her stock interest because she (Lori) withdrew her accounting RFO and Chris filed his restoration RFO after Judge Johnson's appointment order terminated on April 1, 2020. We agree.

The parties' stipulation continuing Judge Johnson's service stated, "This appointment order shall terminate on April 1, 2020, **('Termination Date')** except as follows: (a) by further stipulation, or (b) if any request for orders filed prior to the Termination Date are still pending and undecided as of the Termination Date, then Judge Johnson's appointment shall be automatically extended only as to the filed requests for order until the conclusion of such matter(s) without the need for further written stipulation or court order."

Lori filed her accounting RFO on April 30, 2019—prior to the April 1, 2020, expiration of Judge Johnson's appointment. On June 26, 2020, Lori filed her notice withdrawing her accounting RFO.

On October 14, 2020, Chris filed his restoration RFO. On December 3, 2020, Judge Johnson granted Chris's restoration RFO.

On October 8, 2021, some 15 months after Lori filed her notice withdrawing her accounting RFO, Judge Johnson ruled on Lori's accounting RFO.

We hold that Lori's notice withdrawing her accounting RFO was effective when made on June 26, 2020. Judge Johnson's ruling granting Chris's restoration RFO tacitly supports our holding. That is, if Lori's withdrawal of her accounting RFO had

9

not been effective when made, Judge Johnson would not have later had to order that RFO restored.  Chris does not cite, and we have not found, any case that holds that a party needs a trial court's approval to withdraw a motion.  Because Lori withdrew her accounting RFO, Judge Johnson did not have jurisdiction to rule on it.  Chris's restoration RFO did not restore Lori's withdrawn accounting RFO and Judge Johnson's jurisdiction because Chris filed it after April 1, 2020, the date Judge Johnson's appointment terminated under the parties' stipulation.

## IV.   DISPOSITION

The order is reversed.  Lori is awarded her costs on appeal.

KIM, J.

We concur:

BAKER, Acting P. J.

MOOR, J.

10

In re Marriage of DeWolfe
B313469


BAKER, Acting P. J., Concurring



I have signed the opinion for the court because I agree reversal is required solely as a result of the stipulated temporary judge's error in deciding a motion for an accounting that appellant Lorraine DeWolfe had already withdrawn.  I write separately because this appeal shines some light on the use of stipulated temporary judges, and what is illuminated may warrant broader reflection.

The parties in this action stipulated to the use of a privately compensated temporary judge.  Under the terms of the temporary judge's appointment—of which the judge herself was well aware—the judge was to be paid on an hourly basis solely by respondent Christopher DeWolfe.  When the temporary judge was appointed, she did not take and subscribe the oath of office.  (Cal. Rules of Court, rule 2.831(b).)  When Christopher DeWolfe substituted in new counsel during the proceedings, the temporary judge did not disclose the newly substituted law firm had served as counsel in other matters over which the judge previously presided.  And, as the opinion for the court catalogs, when Lorraine DeWolfe withdrew her motion for an accounting, the temporary judge granted Christopher DeWolfe's application to "restore" the motion to the calendar, exceeded the contemplated term of her stipulated appointment, and decided the motion in

Christopher DeWolfe's favor—all of which increased the compensation the temporary judge was due.

The use of stipulated temporary judges is an established practice, and I do not doubt the practice has some advantages. But from what I see in this appeal, it may be time for some re-examination of the rules and procedures in place to permit the practice, including the extent to which existing rules and procedures are being followed. After all, courts have an independent interest in ensuring "'legal proceedings appear fair to all that observe them.'"[1] (*Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1205.)

BAKER, Acting P. J.

---

[1] I believe the temporary judge's actions were an attempt to prevent Lorraine DeWolfe from engaging in what the judge saw as forum shopping, but that is not the only inference an observer could draw from the judge's decision to determine the withdrawn motion.

Filed 7/21/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re Marriage of LORRAINE T. and CHRISTOPHER T. DeWOLFE. | B313469 consolidated with B317196 |
| | (Los Angeles County Super. Ct. No. BD483342) |
| LORRAINE T. DeWOLFE, | |
| Appellant, | ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION |
| v. | |
| CHRISTOPHER T. DeWOLFE, | |
| Respondent. | |

THE COURT:

Good cause appearing, the opinion in the above entitled matter, filed on June 28, 2020, is hereby modified as follows:

1. On page 9, last paragraph, first line, adding ", on the specific scenario presented here," after "We hold".

2. On page 10, third line, deleting "Chris does not cite, and we have not found, any case that holds that a party needs a trial court's approval to withdraw a motion." and adding "Chris does not cite, and we have not found, any case that holds that a party needs a trial court's approval to withdraw this sort of motion under the circumstances presented."

The filed opinion was not certified for publication in the Official Reports. Upon application of appellant Lorraine T. DeWolfe, for good cause appearing, and pursuant to California Rules of Court, rule 8.1105(b)it is ordered that the opinion shall be published in the Official Reports.

There is no change in the judgment.

_____

BAKER, Acting P. J.          MOOR, J.          KIM, J.

2